UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SHERI L. BROWN, <br> *Plaintiff*, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> *Defendant*. | § § § § § § § § § § § § § |

No. 1: 22-CV-1367-DAE

ORDER ADOPTING U.S. MAGISTRATE JUDGE LANE'S
REPORT AND RECOMMENDATION

      Before the Court is U.S. Magistrate Judge Lane's Report and Recommendation ("Report"), issued on November 28, 2023, concerning Plaintiff Sheri L. Brown's ("Brown") appeal from a denial of social security disability benefits. (Dkt. # 1.)

      The Court finds this matter suitable for disposition without a hearing. After careful consideration, the Court—for the reasons that follow— **ADOPTS** Judge Lane's Report and **AFFIRMS** the Commissioner's Decision.

BACKGROUND

      On May 27, 2020, Sheri L. Brown protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2009. The claim was denied initially and upon

1

reconsideration. Thereafter, Brown filed a written request for a hearing. On March 22, 2022, ALJ Peri Collins held a telephonic hearing, at which Brown and her counsel appeared, as well as an impartial vocational expert. At the hearing, Brown amended her alleged onset date to April 2, 2020. (T-19.) The ALJ issued an unfavorable decision on May 26, 2022. (T-30.)

Brown appealed the ALJ's decision. On October 26, 2022, the Appeals Council denied her request for review of the ALJ's decision. The Commission thereby adopted the ALJ's decision as the Commissioner's final administrative decision. (T-1.) Brown filed this action seeking judicial review of the ALJ's decision. (Dkt. # 1.)

## APPLICABLE LAW

The Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected. See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider. Thomas v. Arn, 474 U.S. 140, 151 (1985). A district court need not consider "[f]rivolous, conclusive, or general objections." Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987). "A judge of the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Findings to which no specific objections are made do not require de novo review; the Court need only determine whether the recommendation is clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

Judicial review of the ALJ's decision is limited. Specifically, the district court reviews: (1) whether the decision was supported by substantial evidence; and (2) if so, whether the Commissioner applied the proper legal standard.  Copeland v. Colvin, 771 F.3d 920, 923 (5th Cir. 2014) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Copeland, 771 F.3d at 923; Myers v. Apfel, 238 F.3d 617, 619 (5th Cir. 2001) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)).  It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence.  Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  As a result, the court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision."  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988) (citing Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).

DISCUSSION

I.    ALJ's Findings

Disability is defined as the "inability to engage in substantial gainful activity by reasons of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and (5) whether the impairment or combination of impairments prevents the claimant from any other work.  20 C.F.R. § 416.920.  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis.  Greenspan, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis.  Leggett, 67 F.3d at 565.  Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing.  Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).  The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations.  Rivers v. Schweiker, 684 F.2d 1144, 1155 (5th Cir. 1982).  If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work.  Id.

The ALJ found at step one that Brown had engaged in substantial gainful activity since April 2020 but there had been a continuous 12-month period during which Brown did not engage in substantial gainful activity.

5

At step two, the ALJ found Brown has the following severe impairments: degenerative disc disease; scoliosis; arthritis; obesity; migraine headaches; history of carpal tunnel syndrome status post release surgeries. (T-22.) The ALJ also found Brown has several nonsevere impairments. (T-22.) Specifically, the ALJ found Brown's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in Brown's ability to perform basic mental work activities and are therefore nonsevere. (T-22.) In making this determination, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. Because Brown's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, the ALJ determined they are nonsevere. (T-23.) (citing 20 C.F.R. § 416.920a(d)(1)).

At step three, the ALJ determined Brown does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). (T-23.) The ALJ

determined that Brown retains the residual functional capacity ("RFC")[1] to perform:

> Light work as defined in 20 CFR 404.1567(b) except she can stand/walk for four hours and sit for six hours in an eight-hour day. She can occasionally climb ramps/stairs but never climb ladders, ropes, or scaffolds. She can occasionally stoop, crouch, crawl, kneel, or balance. She can frequently reach, handle, and finger (no limitations on feeling). She must avoid concentrated exposure to extreme noise and extreme temperatures, which is less than one-third of the workday. No assistive device is medically necessary for ambulation.

(T-24.)  Specifically, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  (Id.)  In making this RFC assessment, the ALJ determined that Brown's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T-25.)

---

[1] RFC is defined as the most an individual can still do despite their limitations.  20 C.F.R. § 404.1545.  The responsibility to determine a claimant's RFC belongs to the ALJ.  Id.; § 404.1546; Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995).  In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite their physical and mental limitations. 20 C.F.R. § 404.1545.  The ALJ must consider the limiting effects of the claimant's impairments, even those that are nonsevere, and any related symptoms. See 20 C.F.R. §§ 404.1529, 404.1545.  The relative weight to be given to the evidence, however, is within the ALJ's discretion.  See Chambliss v. Massanari, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988)).

Continuing to step four of the sequential evaluation process, the ALJ found Brown was able to perform her past relevant work as an escrow officer, which did not require the performance of work-related activities precluded by her RFC. (T-29.) Accordingly, the ALJ found Brown had not been under a disability from April 2, 2020 through the date of the decision. (T-29.)

II.   Brown's Objections

Brown makes four objections to the ALJ's decision and Judge Lane's Report. The Court will evaluate each in turn.

A. Brown claims the ALJ failed to individually rate each area of mental functioning.

First, Brown argues the ALJ legally erred in failing to individually rate each area of a claimant's mental functioning, including (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

The regulation requires that the ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 CFR. 404.1520a(e)(4).

Brown argues the ALJ declined to rate each functional area in this manner, instead stating only that "Plaintiff's mental impairments cause "no more than mild" limitation in "**any**" area. (See Dkt. # 9, p.4 (quoting T-23) (emphasis added).

8

Judge Lane disagreed with Brown's reading of the ALJ's decision. As Judge Lane wrote, "[t]he ALJ found [Plaintiff] had no more than mild limitations in **each** of the four areas of functioning." (Id. (citing T-23) (emphasis added)).

The Court agrees with Judge Lane's assessment of the ALJ's decision. The ALJ did assess and make findings as to each area of functioning. In fact, for each area of mental functioning, the ALJ described specific acts taken by Brown to conclude that each area of mental functioning was mild. The ALJ assessed claimant's medical history to conclude that Brown is not significant for any cognitive deficits or impairments. (T-22.) Based on the record, the ALJ concluded that Brown interacted with others. (Id.) The ALJ found that Brown's depression and anxiety did not leave her isolated in the home. (Id.) Rather, the ALJ found that the claimant spends time with others regularly and can travel outside of her home unaccompanied. (Id.) The ALJ found that Brown has no problems getting along with medical professionals. (Id.) The ALJ found that Brown is able to complete day-to-day chores, showing only mild impairment in the area of concentration, persisting, or maintaining pace. (Id.) Lastly, the ALJ concluded that Brown is able to manage herself and does not require prompting or reminders to take care of her personal hygiene. (Id.)

It is true that the ALJ could have been more explicit in her concluding sentence on her specific findings for each functional area. But ultimately, Brown's disagreement with the ALJ's interpretation of the medical records is not a basis for legal error. In this case, the ALJ made specific findings with respect to each of the four functional areas described in § 404.1520a(c). The semantics used by the ALJ does not frustrate the Court's ability to determine whether there is substantial evidence for the ALJ's conclusion that each of Brown's mental function areas are no more than mild.

In this case, even if the Court did take issue with the language used by the ALJ, the outcome would not change. The ALJ concluded that the mental limitations were no more than mild. Therefore, "mild" findings as part of the "special technique" do not mandate the inclusion of mental limitations in the RFC where the mild limitations do not affect the claimant's ability to work. Jeansonne v. Saul, No. 20-30570, 2021 WL 1373965, at *3 (5th Cir. Apr. 12, 2021). The RFC that the ALJ assessed "reflect[ed] the degree of limitation [she] found in the 'paragraph B' mental function analysis." (Tr. 23). Here, the ALJ found "no more than mild" limitations in the four "paragraph B" criteria, and thus, properly excluded mental limitations from the RFC. (Tr. 22-29).

As with many of its sister Circuits, the Fifth Circuit has declined to adopt a *per se* rule requiring remand no matter how irrelevant or uncontested are

10

mental limitations impact her functioning. Brown asserts that this is a legal error because the "ALJ must consider all the record evidence." Judge Lane found that the ALJ considered Dr. Kim's opinion. The Court agrees with Judge Lane.

Brown's argument is misleading. The ALJ specifically mentions Dr. Kim's opinion. The ALJ then discounts Dr. Kim's opinion because it relies too heavily on Brown's self-reporting. The Court agrees with Judge Lane that Brown attempts to cast her factual dispute as a legal error. Therefore, Brown's objection to the ALJ's review of medical evidence is without merit.

        C. <u>Brown claims the ALJ erred in failing to explain how her participation in daily activities demonstrates that she has "no more than mild" limitations in mental functioning.</u>

In reviewing Brown's medical records and opinions from doctors, the ALJ found that Brown's impairments are no more than mild. The ALJ found that her impairments are no more than mild in part because she "spends time with others," travels "outside of her home unaccompanied," has "no noted problems getting along with treating medical professionals," does not require reminders to "take care of her personal hygiene," and "prepares meals, does household chores, and shops for necessities." (T-23.).

Brown asserts the ALJ's decision is inadequate because it fails to elaborate or create a causal link between Brown's daily activities and the ALJs finding that her mental impairments are "no more than mild."

12

The Court disagrees with Brown's objection. The ALJ did everything required by reviewing all the evidence and determining based on Brown's activities the level of her mental impairment. Brown's contention that the listed activities fail to speak to her level of mental impairment is incorrect. Whether Brown is able to leave her home and interact with others is relevant to her mental health. In fact, depression and anxiety can presumably cause some to stay at home, creating loneliness and social isolation. It is not uncommon for ALJ's to use day-to-day activities as evidence of mental impairment in the four broad areas outlined in the regulation. See e.g., Mary C. R. v. Kijakazi, No. 3:20-CV-00286-BT, 2021 WL 4476764, at *6 (N.D. Tex. Sept. 30, 2021) (finding substantial evidence in the ALJ's decision where claimant "is able to care for pets, prepare simple meals daily, do laundry, go outside, drive, shop in stores and count change.") The Court therefore finds that the ALJ did not err in justifying its decision based on acts directly relevant to Brown's mental impairment.

D. <u>Brown claims the ALJ applied an improper severity standard.</u>

Brown argues that the ALJ committed a legal error in stating that "Plaintiff's mental "limitations were mild and thus [her mental impairments] nonsevere." (Dkt. # 9, p. 5-6).

The Court concedes that the ALJ used a poor choice of words.  An ALJ should not assume that because a limitation is mild that the mental impairment is non-severe.

An impairment can be considered not severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  Keel v. Saul, 986 F.3d 551, 555 (5th Cir. 2021) (quoting Stone v. Heckler, 752 F.2d 1099, 110-11 (5th Cir. 1985)).  Under the standard set by Stone (and adopted by SSR 85-28) an impairment is not-severe only if it "would not" interfere with the ability to work.  752 F.2d 1099.  An impairment is not considered nonsevere simply because it does not cause mild or minimal work-related functional limitations.  Guzman v. Berryhill, No. EP-17-CV-312-MAT, 2019 WL 1432482, at *5–6 (W.D. Tex. Mar. 29, 2019).  That is because the potential for even a mild or minimal effect on work-related functioning is greater than no possibility of interference to any degree.  Stone, 752 F.2d at 110; Guzman, 2019 WL 1432482, at *6.

Judge Lane correctly noted the Fifth Circuit's severity standard and concluded that the ALJ correctly applied it.  The Court agrees with Brown that Judge Lane did not elaborate on how the ALJ correctly applied the severity standard.  Moreover, the Court agrees that the ALJ incorrectly asserted that a mild

impairment automatically equates with non-severe mental impairment. However, the Court cannot say that the ALJ's conclusion resulted in an error. Rather, elsewhere in the decision and in her analysis, the ALJ applied the proper standard.

The ALJ stated in her analysis that "the claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (T-22.) In Keel v. Saul, the Fifth Circuit held that this standard set forth in Social Security Ruling 85-28 comports with the traditional Stone standard. 986 F.3d 551, 556 (5th Cir. 2021). Therefore, the ALJ properly cited the standard in her analysis and used it to determine Brown's severity level.

The Court does not deny that at one point the ALJ used questionable language in describing the severity standard. However, there is no doubt that generally, a rating of "none" or "mild" means the impairment or impairments is not severe and will not indicate "more than a minimal limitation [in a claimant's] ability to do basic work activities." Pamela Joyce B. v. Kijakazi, No. 1:21-CV-00087-H-BU, 2022 WL 3161941, at *4 (N.D. Tex. July 21, 2022), report and recommendation adopted sub nom. Pamela B. v. Kijakazi, No. 1:21-CV-087-H-BU, 2022 WL 3159273 (N.D. Tex. Aug. 8, 2022)

Moreover, the Fifth Circuit has held that "procedural perfection in administrative proceedings is not required. [The] Court will not vacate a judgment unless the substantial rights of a party have been affected." Barratt v. Astrue, No. 07-5167, 2008 WL 2325636, at *2 n.1 (5th Cir. 2008) (citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)). Even if this Court were to conclude that the ALJ failed to properly apply the Stone standard, such a conclusion does not require an automatic reversal. Rather, the Court would evaluate whether harmless error occurred. See Taylor, 706 F.3d at 603 (applying harmless error analysis where the ALJ failed to cite Stone at step two but proceeded to later steps in the sequential evaluation process); see also Snell v. Chater, 68 F.3d 466 (5th Cir. 1995) (per curiam) ("[T]his court has held that when the ALJ's analysis goes beyond Step Two ... specific reference to Stone and its requirements is not necessary."). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err. See Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam). Brown does not meaningfully address how the ALJ's application of SSR 85-28 produced a different outcome in her case. Thus, Brown fails to overcome the harmless error rule. See Shinseki v. Sanders, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (noting that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). Here, in reviewing both the

16

evidence and the ALJ's analysis, the Court finds the determination ultimately reflects the proper standard.

CONCLUSION

For the foregoing reasons, the Court **ADOPTS** Judge Lane's Report and Recommendation.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, January 10, 2024.

_____
David Alan Ezra
Senior U.S. District Judge